## FRICKS v. LEWIS.

1. An order of the Probate Court granting a final discharge to an administrator, on his *ex parte* application, is a disavowal of trust on the part of the administrator and gives currency to the statute of limitations.
2. Acts done in the proper public office and open to the inspection of all, are notice to all persons interested.
3. Under the Code of Procedure an infant has as much time as persons not under disability, within which to commence actions other than for the recovery of real property; and under section 122 of the Code, he has also (with a few specified exceptions) one additional year after his majority, if the time limited for such actions expire before or within that additional year.
4. Therefore, where an administrator made disavowal of his trust in 1871, and a distributee commenced action for accounting against him in 1885, two years after attaining her majority, the action was barred, as it was not commenced within six years after the accrual of the cause of action, nor within one year after disability expired.
5. This section of the Code (122) and its effect upon actions by persons under disability, considered and construed.

Before KERSHAW, J., Pickens, June, 1886.

The opinion fully states the case.

*Messrs. Child & Boggs,* for appellant.

*Mr. M. F. Ansel,* contra.

March 8, 1887.   The opinion of the court was delivered by

MR. JUSTICE MCIVER.   Prior Alexander, sr., died intestate in 1870, and his son, E. B. Alexander, administered on his estate.   On October 30, 1871, after advertising for one month in the county newspaper notice of his intention to apply on that day to the judge of probate for a final settlement and discharge, he obtained an order to pay out the balance in his hands to three of the distributees, not including these plaintiffs, on the ground that the other distributees had received advancements from the intestate to the full amount of their shares, and that thereupon he be discharged from his trust.   To this proceeding these plaintiffs, who were both minors at the time, were not parties, and do not appear to have had any actual notice of it.   E. B. Alexander died intestate in 1878, and the defendant, Lewis, on January 18, 1879, duly qualified as his administrator.   Before the commencement of this action the defendant had administered all the assets of his intestate's estate, without notice of this claim of the plaintiffs, except the sum of thirty-two 64–100 dollars.

On January 24, 1885, this action was commenced for the recovery of one hundred and twenty-nine dollars and seventy-five cents, one-fifth of the net estate of Prior Alexander, sr., in the hands of E. B. Alexander as his administrator on October 30, 1871, with interest from that date.   The defendant relies upon three defences: 1st. That the father of the plaintiffs, through whom they claim, was fully advanced by his father, Prior Alexander, sr., in his life-time.   2nd. That the plaintiffs are barred by the statute of limitations.   3rd. *Plene administravit praeter* the sum above stated.   The referee[1] to whom the issues were referred reported against the defendant on his first defence, but found that the claim was barred by the statute of limitations, and therefore recommended that the complaint be dismissed.   Upon exceptions to this report, the Circuit Judge reversed the referee as to the statute of limitations, and sustaining the report in other respects, rendered judgment for the plaintiffs, subject to the plea of *plene administravit praeter*.

From this judgment the defendant appeals, substantially upon

---

[1] J. J. Norton, Esq., now Judge of the Eighth Circuit.—REPORTER.

the ground of error in overruling his plea of the statute. The solution of the question presented by this appeal depends upon the answer to two inquiries: 1st. Was the order of final discharge, obtained by E. B. Alexander as administrator of Prior Alexander, sr., from the judge of probate on October 30, 1871, such a throwing off his trust as would give currency to the statute? 2nd. If so, has a sufficient time elapsed since that date to complete the bar of the statute as to these plaintiffs, who were then minors?

It seems to us that the authorities in this State require that the first question shall be answered in the affirmative. *Payne* v. *Harris*, 3 *Strob. Eq.*, 42; *Pettus* v. *Clawson*, 4 *Rich. Eq.*, 101; *Brockington* v. *Camlin*, 4 *Strob. Eq.*, 196. The cases of *Riddle* v. *Riddle*, 5 *Rich. Eq.*, 37; *Renwick* v. *Smith*, 11 *S. C.*, 303; *Dickerson* v. *Smith*, 17 *Id.*, 305, cited by the counsel for respondent in opposition to this view, do not sustain his position. In *Riddle* v. *Riddle* there was no settlement of the estate, and nothing that purported to be so. The act relied upon there was simply an *ex parte* return made by the administrator—as the court says, "his first and only return"—and this was certainly no indication that the administrator thereby intended to throw off his trust. On the contrary, it was simply the performance of a duty which the law requires the administrator to perform annually as long as he continues in office as such, and certainly afforded no evidence whatever that he claimed to have discharged his whole trust and duty. The case of *Renwick* v. *Smith* seems to have been rested mainly upon that of *Riddle* v. *Riddle*, *supra;* but Willard, C. J., in delivering the opinion of the court, expressly admits that, "The currency of the statute does not necessarily depend upon the fact of a full and final discharge of the duty of the administrator. It commences to run when it appears that the administrator has done some act, brought to the notice of the parties affected by it, equivalent to an abandonment of such office, although such act may be in itself wrongful. But the case before us presents no such state of things."

In the case of *Dickerson* v. *Smith* the settlement relied on "was, at most, only a partial settlement, * * and left in the hands of the executors a large amount of assets for future admin-

istration." So that it was clear, under the view which the court took of that settlement, there was nothing to indicate that the executors thereby intended to throw off their trust. And accordingly the court uses this language: "It is only when a fiduciary really lays aside his trust, or does some act manifesting clearly his intention to do so, that the statute begins to run against the trustee of an express trust." The cases of *Long* v. *Cason*, 4 *Rich. Eq.*, 60, and *Sollee* v. *Croft*, 7 *Id.*, 34, also cited by respondent's counsel, seem to us to support the view which we have adopted, rather than that contended for by respondent. It is insisted, however, that it was necessary to show that notice of this final settlement should have been brought home to these plaintiffs, before it could be relied upon as a starting point for the statute of limitations. But we think that the cases above referred to show that acts done in a public office, open to the inspection of all, are notice to all who may be interested. To use the language of Johnston, Ch., in *Payne* v. *Harris*, *supra*, adopted in *Pettus* v. *Clawson*, *supra*, *Long* v. *Cason*, *supra*, and others: "An act done in a public office, open for the information of parties interested, must be taken notice of by them."

Now, in this case the administrator, on October 30, 1871, undoubtedly intended to make, and did make, a final settlement of his intestate's estate, and unquestionably intended thereby to discharge himself of his trust. This was an act done by him in a public office—in the language of Dargan, Ch., in *Pettus* v. *Clawson*, *supra*, "In an office proper for such acts, and where they may of right be done, and open at all times for the information of parties interested," and must, therefore, be taken notice of by them. He unquestionably thereby repudiated any fiduciary relation between himself and these plaintiffs, for in the decree then obtained it was determined (erroneously as it now seems) that the father of the plaintiffs, through whom they claim, having been fully advanced in the life-time of the intestate, had no further interest in his estate. Now, although this decree and order of final discharge cannot have the force and effect of a judgment, so as to estop these plaintiffs from asserting their claims, inasmuch as they were not parties to the proceeding (*Miller* v. *Alexander*, 1 *Hill Ch.*, 25; *Roberts* v. *Johns*, 16 *S.*

*C.,* 171), yet, under the authority of the cases above cited, it certainly does furnish a starting point for the currency of the statute of limitations.

The only remaining inquiry is, then, whether a sufficient time has elapsed to bar this action of the plaintiffs. It appears from the report of the referee that the plaintiff, Josephine, attained her majority on January 24, 1883, and the other plaintiff about two years before, and that this action was commenced on January 24, 1885. So that it seems that the action was not commenced until upwards of thirteen years after the order of final discharge was granted, to wit, on October 30, 1871, when the cause of action accrued, and not until two years after the disability of the younger of the two plaintiffs ceased. These being the facts, the law applicable thereto will be found in section 122 of the Code of Procedure, which reads as follows: "If a person entitled to bring an action mentioned in the last chapter, except for a penalty or forfeiture, or against a sheriff or other officer for an escape, be, at the time the cause of action accrued, either 1. Within the age of twenty-one years; 2. Insane; or 3. Imprisoned on a criminal or civil charge, or in execution under the sentence of a criminal court for a term less than his natural life, the time of such disability is not a part of the time limited for the commencement of the action; except that the period within which the action must be brought cannot be extended more than five years by any such disability, except infancy; nor can it be so extended, in any case, longer than one year after the disability ceases."

The whole question turns upon the construction of this section. The plaintiffs contend that when the disability arises from infancy the statute does not commence to run until the disability ceases, and hence that an infant may bring his action at any time within six years after he has attained the age of twenty-one years. The defendant, on the other hand, contends that while an infant is entitled to the full period of six years from the accrual of the cause of action, within which to bring his action, yet that such period cannot be extended longer than one year after the disability ceases.

The particular portion of the section to be considered in deter-

mining this controversy, is the last paragraph, which, it must be admitted, is not couched in language as plain as it might be. It will be observed that the section deals with three classes of disability—infancy, insanity, and imprisonment—and it will be noted that in the last paragraph it is declared, first, in general terms, that the time of such disability—applying, of course, to all the three classes above mentioned—is not a part of the time limited for the commencement of the action ; and if it stopped there, the necessary result would be that, practically, the statute would not commence to run against a person laboring under either of these three classes of disability until such disability was removed. But the paragraph proceeds next to make an exception to this general declaration, so far as two of the classes, to wit, insanity and imprisonment, are concerned, by declaring that the time within which the action must be brought cannot be extended more than five years by any disability arising from insanity or imprisonment. So that it would seem that in no case is a person laboring under either of these two disabilities allowed more than eleven years within which to bring his action. But the paragraph does not stop there, for it finally declares a general qualification, which does not seem to be confined to any one or more of the three classes of disability referred to in the section, but covers them all, by declaring that in no case shall the time allowed for bringing the action be so extended for a longer period than one year after the disability ceases.

Now, if this last general qualification had been intended to be confined to the disabilities arising from insanity or imprisonment, to which the exception immediately preceding alone applied, then it seems to us that the words, "in any case," which we find in the last general qualification, would have been not only unnecessary, but altogether inappropriate, and that the word "such" would have been substituted for the word "the" immediately preceding the word "disability" in the last line of the section, and that a comma would have been substituted for a semi-colon between the word "infancy" and the word "nor" in the line next to the last of the paragraph, so that the paragraph would read : "The time of such disability is not a part of the time limited for the commencement of the action ; except that the period within which

the action must be brought cannot be extended more than five years by any such disability, except infancy, nor can it be so extended longer than one year after such disability ceases." But where the language is as we find it in the statute—"nor can it be so extended, *in any case*, longer than one year after *the* disability ceases"—we see no warrant for confining this final, general declaration to cases of disability arising from insanity or imprisonment, but, on the contrary, it must extend, as is expressly declared in the act, to *any case* of disability arising from either of the causes mentioned in the section ; the object being to limit the extension allowed in cases of disability arising from insanity or imprisonment to a period of five years, while in cases of disability arising from infancy the extension might be for a much longer period ; but at the same time to declare that the time should not be extended, *in any case*, for a longer period than one year after the disability ceases.

It is urged, that by this construction of the statute infants are placed at a disadvantage, for while adults are, in every case, allowed six years within which to bring their actions, an infant may, in some cases, be cut down to two years or less, *e. g.*, if a cause of action accrues to an infant on the day he attains the age of twenty years, and he is limited to one year after his disability ceases, then he would only be allowed two years within which to commence his action, whereas an adult, to whom a similar cause of action accrued on the same day, would be allowed six years. But this is based upon a misconception of the effect of the construction which we have adopted. According to our view, *all* persons, whether laboring under any disability or not, must be allowed the full period of six years from the accrual of the cause of action, but in the case of infants the time allowed may be extended over a much longer period, but such *extension* cannot be for a longer period than one year after his disability ceases. For instance, if a cause of action accrued to an infant when he was only a year old, he could bring his action at any time within twenty-one years. If it accrued when he was fifteen years of age, then he might bring his action at any time within seven years, giving him the full period of six years allowed to adults, and one year after he attained his majority in addition. But if

his cause of action accrued when he was sixteen years of age, then he would be limited to the six years, because the statute does not provide for any extension of the time allowed after the lapse of one year from the time his disability ceases.

There does not seem to be any case in this State bearing directly upon the point which we have been considering, and hence we have been compelled to put our own construction, without the aid of authority, upon the terms of the statute.    There is a case, however, *Hill* v. *Connelly*, 4 *Rich.*, 615, in which the Court of Errors considered a somewhat similar question, and their conclusion, by analogy at least, lends some support to the view which we have adopted.

The action in this case having been commenced neither within six years after the accrual of the cause of action, nor within one year after the disabilities of the plaintiffs were removed, we are of opinion that the plea of the statute of limitations should have been sustained, and that the Circuit Judge erred in ruling otherwise.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and that the complaint be dismissed.